# EXHIBIT 1

**21-MJ-5356-JGD**

## AFFIDAVIT OF FBI SPECIAL AGENT MARIA CLASSON

I, Maria Classon, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I have been employed as a Special Agent with the Federal Bureau of Investigation ("FBI") since May 2019, and am currently assigned to the Boston Field Office, Organized Crime Drug Enforcement Task Force (OCDETF) Strike Force. I am a "federal law enforcement officer" as defined in Rule 41(a)(2)(C) of the Federal Rules of Criminal Procedure, that is, a government agent who is engaged in enforcing the criminal laws of the United States and within a category of officers authorized by the Attorney General to request a search warrant.

2. Prior to my current employment with the FBI, I was employed by the Lee County Sheriff's Office in Fort Myers, Florida for approximately 12 years. During that time, I worked as a Corrections Officer, Bailiff, Patrol Deputy, Narcotics Detective, Criminal Investigations Detective, District Intelligence Detective, and Patrol Sergeant.

3. During my career in law enforcement, I have received training and gained experience related to a variety of criminal activities. In the course of my training and experience, I have become familiar with the methods and techniques associated with the distribution of narcotics, the laundering of drug proceeds, and the organization of drug trafficking conspiracies. In the course of conducting criminal investigations, I have employed the following investigative techniques: interviewing informants and cooperating witnesses; conducting physical surveillance; conducting short-term and long-term narcotics investigations; consensual monitoring and recording of both telephonic and non-telephonic communications; analyzing telephone pen register and toll record data; conducting court-authorized electronic surveillance; and preparing and executing search warrants that resulted in seizures of narcotics, firearms, and other contraband.

## PURPOSE OF THE AFFIDAVIT

4. I make this affidavit in support of an application for a search warrant to search the following location:

    a. Safe Deposit Box # 138, leased in the name of Patrick O'Hearn, and located at the TD Bank branch located at 12 Whiting Street, Hingham, MA, 02043 (hereinafter, the "Target Location").

5. I am currently participating in the investigation of Reshat ALKAYISI (hereinafter, "ALKAYISI") and the ALKAYISI drug trafficking organization (hereinafter, the "ALKAYISI DTO"), which includes, among others, Patrick O'HEARN (hereinafter, "O'HEARN"). This criminal organization distributes methamphetamine to retail customers and to other drug dealers. This investigation of the ALKAYISI DTO is being conducted by FBI agents and Task Force Officers, as well as other members of the OCDETF Strike Force. The investigation relates to violations of federal criminal laws including, but not limited to, the distribution of controlled substances, in violation of 21 U.S.C. § 841(a)(1); use of a communications facility in the commission of controlled substances trafficking offenses, in violation of 21 U.S. C. § 843(b); conspiracy to commit drug trafficking offenses, in violation of 21 U.S.C. § 846; and money laundering offenses, in violation of 18 U.S.C. §§ 1956, 1957 (collectively, the "Target Offenses").

6. On July 7, 2021, this Court issued a warrant authorizing investigators to search O'HEARN's residence, located at 501 Commerce Drive, Unit 4204, Braintree, MA 02184, and to seize items related to the Target Offenses. *See* Dkt. No. 21-MJ-5315-JGD. The affidavit I submitted in support of that search warrant (hereinafter, "Classon Affidavit") is incorporated herein by reference.

7. On July 8, 2021, this Court issued a criminal complaint charging O'HEARN with conspiracy to distribute and to possess with intent to distribute 50 grams or more of a mixture and substance containing methamphetamine, and other controlled substances, in violation of 21 U.S.C. § 846, and possession with intent to distribute 50 grams or more of a mixture and substance containing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(viii). *See United States v. Patrick O'Hearn,* No. 21-MJ-5335-JGD. The affidavit of FBI Task Force Officer Michael Muolo submitted in support of the criminal complaint (hereinafter, "Muolo Affidavit") is incorporated by reference herein. The facts set forth in the Classon Affidavit and the Muolo Affidavit (collectively, the "Affidavits") are not repeated herein..

8. This affidavit does not set forth all the facts developed during the course of this investigation. Rather, it sets forth only those facts that are necessary and sufficient to establish probable cause to believe that that evidence, fruits, and instrumentalities of the Target Offenses will be found in the Target Location as described below.

## PROBABLE CAUSE

9. As set forth in the Muolo Affidavit, investigators executed the authorized search of O'HEARN's residence on July 8, 2021. Upon executing the warrant, investigators found approximately 842 grams of suspected methamphetamine, approximately 177.2 grams of suspected ketamine, as well as one small bottle labeled ketamine, approximately 65.4 grams of suspected cocaine, 22 assorted size bottles of suspected GHB, approximately 7.8 grams of suspected hallucinogenic mushrooms, and 21 suspected MDMA tablets. All of the estimated weights listed above include packaging. Each of the substances field tested positive for the substances detailed above.

10. Investigators also seized $23,149 in U.S. currency, a money counter, and jewelry, including three rings, two watches, and a gold chain. In addition to the physical jewelry seized, investigators seized jewelry appraisals for diamond rings and watches, which totaled approximately $13,000 in appraisal value. Some of the cash and jewelry found during the search was located inside one of two safes located within O'HEARN's residence, both of which were fairly full. Also found during the search were numerous financial records listing O'HEARN as the account holder, and various keys, one of which was in a pouch identifying it as a safe deposit box key. Records produced by TD Bank show that O'HEARN maintains a safe deposit box at the Target Location. In addition, during the day of arrest, O'HEARN admitted to investigators that he maintains a safe deposit box with TD Bank.

11. Investigators have obtained bank records associated with the ALKAYISI DTO. A review of those records indicates that, since January 2021, O'HEARN made payments to ALKAYISI via Cash App and Zelle[1] totaling just under $100,000. The bank records also indicate that O'HEARN made payments to ALKAYISI on behalf of James HOLYOKE (hereinafter, "HOLYOKE"), who investigators identified as a large-scale methamphetamine dealer who obtained methamphetamine from ALKAYISI for further distribution. For example, one of the Cash App payments that O'HEARN sent to ALKAYISI for $1,500 included the reference "From JH." Based on the background of the investigation, I believe the initials "JH" referred to HOLYOKE. Additionally, one of the Zelle payments made from O'HEARN to ALKAYISI for $2,000 was on the same day that HOLYOKE sent a $2,400 PayPal payment to O'HEARN. Based on the investigation and my training and experience, I believe that in both those instances,

---

[1] Both CashApp and Zelle are applications that allow peer-to-peer transfers of money between bank accounts.

O'HEARN was paying ALKAYISI on behalf of HOLYOKE for methamphetamine previously supplied on credit.

12.   Since reviewing the various financial records found during the search executed at O'HEARN's residence, investigators are now aware that O'HEARN has accumulated excessive wealth and maintains financial accounts at more than twenty-five different financial institutions. Several of the financial records found during the search were account statements or receipts that revealed recent account balances at various dates in 2021 that showed current account balances collectively totaling approximately $210,000, including Ally Bank checking account *3382 (balance of $28,940), Ally Bank savings account *3371 (balance of $41,383), JPMorgan Chase checking account *9572 (balance of $24,145), JPMorgan Chase savings account *4925 (balance of $17,888), South Shore Bank checking account *3352 (balance of $10,849), Synchrony savings account *8196 (balance of $33,072), and TIAA money market account *0082 (balance of $41,316). In addition to these accounts, also found during the search was a handwritten note that listed account names and balances at Fidelity, Vanguard, Dryfus, Peartree, and Voya, which totaled more than $630,000.

13.   I know from my training and experience that drug traffickers and money launderers often use safe deposit boxes to store cash proceeds and other valuable items in an attempt to conceal them from law enforcement. Given the excessive number of financial accounts maintained by O'HEARN, and the significant evidence of his wealth, I believe that O'HEARN has demonstrated a propensity to spread out his assets, likely in an effort to conceal his overall net worth. Moreover, given that the two safes found during the search at his residence were full, it is reasonable to believe that O'HEARN has stored other items of value, or possibly other financial or drug related records, at the Target Location.

## CONCLUSION

14. Based on the investigation to date, including the Affidavits and the items and financial records seized from O'HEARN's residence, I believe there is probable cause to believe that evidence of O'HEARN's drug trafficking and money laundering activities, including money, records of financial transactions, and other assets, as set forth in Attachment A, will be found inside the Target Location.

15. Disclosure of the contents of the application, affidavit, and search warrants could compromise and jeopardize the ongoing investigation. For that reason, I request that the application, affidavit, and search warrant be sealed until further order of the Court.

Respectfully Submitted,

_____
MARIA CLASSON
Special Agent
Federal Bureau of Investigation

Subscribed to and sworn before me telephonically in accordance with the requirements of Fed. R. Crim. P. 4.1 on __**Jul 14, 2021**__.

_____
HON. JUDITH G. DEIN
United States Magistrate Judge

# ATTACHMENT A
# ITEMS TO BE SEIZED

All records, in whatever form, and tangible objects that constitute evidence, fruits, or instrumentalities of violations of 21 U.S.C. § 841(a)(1) (distribution and possession with intent to distribute controlled substances), 21 U.S. C. § 843 (b) (use of a communication facility during or in relation to a controlled substances trafficking offense), 21 U.S.C. § 846 (conspiracy to distribute and possess with intent to distribute controlled substances), and 18 U.S.C. §§ 1956, 1957 (money laundering offenses), including:

1. Cash, securities, items of value, and other negotiable instruments;

2. Phones or electronic devices used in furtherance of drug trafficking or laundering;

3. Books, records, receipts, notes, ledgers, and other papers relating to the purchase, storage, or distribution of controlled substances. Such documents include, but are not limited to, ledgers; text or email messages from or to suppliers, customers or associates pertaining to the transportation, ordering, sale, and distribution of controlled substances or the disposition of proceeds; bank records; money orders; wire transfers; cashier's checks; checkbooks; passbooks; certificates of deposit; airline travel records; vehicle rental receipts; credit card receipts; and receipts reflecting rental properties and/or storage units;

4. Personal books and papers reflecting names, addresses, telephone numbers, and other contact or identification data relating to the identity and contact information for co-conspirators, drug suppliers, and drug customers. Such documents include, but are not limited to, telephone address books; planners; notes; ledgers; and telephone bills; and

5. Documents or tangible evidence reflecting dominion, ownership, and/or control over any bank accounts, safe deposit boxes, stocks, bonds, mutual funds, and any other financial and/or monetary assets, instruments or interests, and over any tangible assets such as motor vehicles, real property, and commercial storage units.